UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CHARLES J. BULSON,

                            Plaintiff,

-against-                                                1:24-CV-503 (LEK/DJS)

TOWN OF BRUNSWICK, *et al.*,

                            Defendants.

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

On April 11, 2024, Plaintiff Charles Bulson commenced this action by filing a complaint against the Town of Brunswick, the Town of Brunswick Zoning Board of Appeals, Charles Golden, Tom Cioffi, Philip Herrington (collectively, "Town Defendants"), Kenneth Herrington ("Herrington"), Andrew Gilchrist, and Herrington Farms, Inc. Dkt. No. 1 ("Complaint"). Now before the Court is the Town Defendants' motion to dismiss, Dkt. No. 36-20 ("Town Motion") and Herrington's motion for judgment on the pleadings, Dkt. No. 42-1 ("Herrington Motion") (collectively, "Motions"). Plaintiff filed responses to the Motions. Dkt. No. 48 ("Response to Town Motion"); Dkt. No. 49 ("Response to Herrington Motion"). The Town Defendants and Herrington replied. Dkt. Nos. 55, 54.

For the reasons that follow, the Town Motion and the Herrington Motion are granted.

## II.    BACKGROUND

The following facts are set forth as alleged in the Complaint and incorporated by reference. Mindful that the Complaint is 72 pages and contains 560 paragraphs, the Court limits its narration only to those facts relevant to resolving the Motions.

On July 21, 2017, Plaintiff submitted a building permit application with the Town of Brunswick ("Town"), "seeking to construct a 2,000 square-foot 'tractor shed,' or barn" on his property. Compl. ¶ 142. Plaintiff's application "included building plans for the structure that showed a 40-foot by 50-foot foundation." *Id.* ¶ 143. Brunswick Zoning Law ("BZL") § 160-29 states that "[a]ll roofed accessory structures, except for agricultural buildings, shall in the aggregate comprise not more floor area than . . . 1,500 square feet." *Id.* ¶ 146. "As submitted, Plaintiff's proposed 2,000 square-foot structure exceeded the 1,500 square foot limit." *Id.* ¶ 145. Plaintiff maintained, however, that his proposed structure was exempted from the square footage limit because it was "clearly an agricultural building." *Id.* ¶ 156.

In October 2017, Plaintiff received a call from Charles Golden, the Town's Code Enforcement Officer, who told Plaintiff that his permit was approved. *Id.* ¶ 152. "An area variance . . . was not requested or required by [] Golden when he approved the building permit for Plaintiff's 2,000 square-foot barn." *Id.* ¶ 155. Golden "confirmed" on "several occasions" that Plaintiff's structure "was clearly an agricultural building not subject to the 1,500 square-foot limit of [BZL] § 160-29," so Plaintiff was "not required to apply for an area variance." *Id.* ¶ 156.

Ultimately, "Plaintiff built a smaller, more efficient structure than the approved 40-foot by 50-foot building." *Id.* ¶ 160. The structure was a "24.6-foot by 50-foot barn and included an arched gable roof rather than a sloped gable roof that was necessary for the larger building." *Id.* "Golden was aware of the changes to make the barn smaller," and he "did not determine a new or amended building permit was warranted or that an area variance was required." *Id.* ¶¶ 166–67.

However, on April 13, 2021, Golden served Plaintiff with a stop work order ("SWO"). *Id.* ¶ 185. The Town claimed the permit was issued by mistake. *Id.* ¶¶ 48, 229. Attached to the SWO was a letter from Golden dated April 9, 2021, stating:

> An inspection occurred sometime ago for an auxiliary structure that was supposed to be a 40x50 gable roofed single story building. Somehow this structure turned into a 25x50 gambrel roofed, two story barn. I have placed a stop work order on the barn and am going to have to receive a new building permit application with drawings for what was built. The building permit application will include a plot plan that shows the location of this building in relation to the rear property line to confirm that the building is not located within the rear setback.
>
> An area variance will also have to be submitted because the current building is over the maximum of 1500 sq. ft. allowed for an accessory structure because of the second story. The current foot print of 1250 sq. ft is doubled for the second floor and the size of the building with the second floor is 2500 sq ft.

Dkt. No. 36-6 at 2.[1]

On March 21, 2022, Plaintiff submitted an amended building permit application "with drawings for the barn he built." *Id.* ¶ 233. Neither Golden, nor any other representative for the Town, responded to Plaintiff's application. *Id.* ¶ 236.

Eventually, "Golden requested access to inspect Plaintiff's property." *Id.* ¶ 255. "Golden measured the barn, went inside it, and took photos of it." *Id.* ¶ 260. Golden then told Plaintiff that "he needed an area variance for his barn." *Id.* ¶ 261. On a separate occasion, the Town also "instruct[ed] Plaintiff to apply for an area variance for square footage of his barn," "claim[ng] that his barn was not an agricultural building." *Id.* ¶¶ 513, 253. However, Plaintiff does not allege that he ever applied for a variance. *See generally id.*; Resp. to Town Mot. at 39. Plaintiff maintains that he could not, because BZL § 160-8 states that "no appeal seeking a variance shall be reviewed or acted upon . . . for any premises upon which there is an existing violation [of the BZL]." Resp. to Town Mot. at 39.

_____

[1] The Court finds that all documents and exhibits cited in this Order are incorporated by reference in the Complaint. *See Lancaster v. Am. Textile Co., Inc.*, 719 F. Supp. 3d 204, 216 (N.D.N.Y. 2024) (finding that a document is incorporated by reference when the complaint makes a clear, definite, and substantial reference to it).

Ultimately, Golden "refus[ed] to issue a determination on Plaintiff's [] amended building permit application." Compl. ¶ 263. Plaintiff interpreted this refusal to be a "constructive denial" of his application, giving him the right to appeal to the Town's Zoning Board of Appeals ("ZBA"). *Id.* On November 7, 2022, Plaintiff notified the Town of his appeal. *Id.* ¶ 264. For several months after filing his appeal, Plaintiff "had written several letters to the Town Building Department to follow-up, and had received no response." *Id.* ¶ 286. He also attended a Town board meeting to inquire about his application. *Id.* ¶ 285. At those meetings, he also spoke about other "matters of great public concern." *Id.* ¶¶ 554–55.

Then, on April 18, 2023, the ZBA issued a decision stating that it did not have jurisdiction to hear Plaintiff's appeal, because Golden had not "issue[d] a written decision approving or denying" Plaintiff's application. *Id.* ¶ 270. The ZBA "had jurisdiction only for appeals from a 'written order, requirement, decision, interpretation, or determination' by [] Golden." *Id.*

One day later, Golden issued a determination letter on Plaintiff's application. *Id.* ¶ 274. According to Plaintiff, the letter "constituted a written denial," *id.* ¶ 279, and it noted that Plaintiff needed to "apply[] for an area variance due to [the] building size." Dkt. No. 36-19 at 2.

On June 16, 2023, Plaintiff filed a second appeal with the ZBA over the denial of his amended building permit application. Compl. ¶ 280. Plaintiff argued, *inter alia*, that "[n]o area variance was required for the barn because it was exempt as an agricultural building" under BZL § 160-29. *Id.* ¶ 281. On December 5, 2023, the ZBA denied Plaintiff's appeal. *Id.* ¶ 283; *see* Dkt. No. 36-8 at 2–11. In its decision, the ZBA "determine[d] the proper meaning and interpretation" of an "agricultural building" under BZL § 160-29 and applied its interpretation to Plaintiff's

structure. Dkt. No. 36-8 at 5–11. It concluded that the evidence did not support a finding that

Plaintiff's structure was an "agricultural building." *Id.* at 11.

  Arising out of these events, Plaintiff brings this action asserting several causes of action

pursuant to 42 U.S.C. § 1983. He alleges that Defendants violated his procedural due process,

substantive due process, and equal protection rights under the Fourteenth Amendment when his

building permit application and subsequent appeal were denied. Compl. ¶¶ 335–358, 373–536.

Further, Plaintiff brings an as-applied void-for-vagueness challenge to BZL § 160-29 and asserts

that Defendants violated his First Amendment rights by retaliating against him for speaking at

Town meetings and for submitting land use applications. *Id.* ¶¶ 359–368, 553–560. Plaintiff also

alleges a conspiracy to violate his civil rights and a violation of his vested property rights.[2] *Id.* ¶¶

537–552.

  Plaintiff seeks a declaration that BZL § 160-29 is unconstitutionally vague, a declaration

that Plaintiff's property rights have vested, an injunction that lifts the SWO, and damages. *Id.* at

71–72.

## III. LEGAL STANDARD

  The standard of review for a motion to dismiss and a motion for judgment on the

pleadings are indistinguishable. *LaFaro v. N.Y. Cardiothoracic Grp. PLLC*, 570 F.3d 471, 475

(2d Cir. 2009). Therefore, to survive either motion, "a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face." *Div. 1181*

*Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94

---

[2] Included in the causes of action listed in the Complaint is "declaratory judgment." Compl. ¶¶ 369–72. "[I]t is well-settled that a request for declaratory . . . relief is not an independent cause of action." *Daytree at Cortland Square, Inc. v. Walsh*, 332 F Supp. 3d 610, 627 (E.D.N.Y. 2018). Therefore, the Court construes Plaintiff's "cause of action" to be a request for a declaratory judgment.

(2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court must draw all inferences in favor of the plaintiff. *Id.* (citing *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016)). A complaint may be dismissed only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." *Id.* at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleading facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. *See id.* at 678–79.

## IV.    DISCUSSION

### A.  Due Process and Equal Protection Claims

Plaintiff alleges that Defendants violated his procedural due process, substantive due process,[3] and equal protection rights when Golden and the ZBA denied the building permit application for his barn. The Town Defendants and Herrington argue that these claims must be dismissed because they are not ripe for litigation. Town Mot. at 7–10; Herrington Mot. at 4–8. The Court agrees with the Town Defendants and Herrington.

"[T]he ripeness doctrine stems, at least in part, from limitations placed on judicial power by Article III of the Constitution." *United States v. Quinones*, 313 F.3d 49, 57 (2d Cir. 2002). "To be justiciable, a cause of action must be ripe—it must present 'a real, substantial

---

[3] In the portion of the Complaint that alleges a substantive due process violation, Plaintiff cites only to "Defendants' actions" as evidence of any constitutional violation. *See* Compl. ¶¶ 350–58. Mindful that a vague reference to the "actions" of a defendant would ordinarily be insufficient to state a claim, the Court infers that the substantive due process claim relates to Plaintiff's building permit application for his barn.

controversy, not a mere hypothetical question.'" *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d
682, 687 (2d Cir. 2013) (quoting *AMSAT Cable Ltd. v. Cablevision of Conn. Ltd. P'ship*, 6 F.3d
867, 872 (2d Cir. 1993)). "A claim is not ripe if it depends upon 'contingent future events that
may not occur as anticipated, or indeed may not occur at all.'" *Id.* (quoting *Thomas v. Union
Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)).

 "Land use challenges, whether pursued as a takings claim under the Fifth Amendment or
as violations of equal protection or due process, are subject to the ripeness requirement"
articulated in *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S.
172 (1985). *Ferncliff Cemetery Ass'n v. Town of Greenburgh*, 834 F. App'x 665, 665–66 (2d
Cir. 2021). Following the Supreme Court's modification of the *Williamson County* test in *Knick
v. Township of Scott*, 588 U.S. 180 (2019), "*Williamson*'s ripeness test states that a land use
challenge is not ripe for judicial review until the government entity charged with implementing
the relevant regulations has reached a 'final decision' regarding their application to the property
at issue." *Ferncliff*, 834 F. App'x at 666.

 The Second Circuit has held that *Williamson County*'s "final decision" requirement
"conditions federal review on a property owner submitting at least one meaningful application
for a variance." *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 348 (2d Cir. 2005); *see
also Ferncliff*, 834 F. App'x at 666. "This is so because through the variance process local
zoning authorities function as 'flexible institutions; what they take with the one hand they may
give back with the other.'" *Murphy*, 402 F.3d at 353 (quoting *MacDonald, Sommer & Frates v.
Yolo County*, 477 U.S. 340, 350 (1986)). Indeed, by requiring that a landowner submit at least
one meaningful application for a variance, the courts can better "distinguish between those cases
in which a plaintiff has suffered a concrete and particularized, actual or imminent injury, and

those in which the injury is merely speculative and may never occur, depending on the final administrative resolution." *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 122 (2d Cir. 2014) (cleaned up). It also "ensures that all non-constitutional avenues of resolution have been explored first, perhaps obviating the need for judicial entanglement in these constitutional disputes." *Murphy*, 402 F.3d at 354.

While an application for a variance is typically necessary for a "final decision," this requirement "is not to be 'mechanically applied.'" *Lost Lake Holdings LLC v. Town of Forestburgh*, No. 22-CV-10656, 2023 WL 8947154, at *5 (S.D.N.Y. Dec. 28, 2023) (quoting *Murphy*, 402 F.3d at 349). "A property owner will be excused from seeking a variance . . . if doing so would be futile." *Ferncliff*, 834 F. App'x at 666. "Futility occurs 'when a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied.'" *Id.* (quoting *Murphy*, 402 F.3d at 349)). When there is "no practical or logical reason to require [a plaintiff] to apply for a variance," the court need not withhold federal review. *Lost Lake*, 2023 WL 8947154, at *5.

Here, Plaintiff does not allege that he ever filed a variance. *See generally* Compl.; Resp. to Town Mot. at 39. Plaintiff does argue, however, that his claims are nevertheless ripe.

First, Plaintiff argues that he received a "final decision" when the ZBA issued a final determination on his building permit application appeal. Resp. to Town Mot. at 8. However, a decision on a building permit application appeal—without having applied for a variance—is not a "final decision" for the purposes of the *Williamson County* ripeness test. *See Ferncliff*, 834 F. App'x at 666 (finding the plaintiff's land-use challenge unripe because the plaintiff "ma[de] no allegation that it ha[d] sought or made an application for a variance after the [t]own's Zoning Board of Appeals [] upheld the denial of the building permit").

Next, Plaintiff argues that he should be excused from the "final decision" requirement because it would have been "impossible" to receive a variance. Resp. to Town Mot. at 8–9. He explains that the Town imposed a SWO on his barn, and BZL § 160-8 states that "no appeal seeking a variance shall be reviewed or acted upon . . . for any premises upon which there is an existing violation [of the BZL]" *Id.* at 8–9, 39. However, other provisions in the BZL and Plaintiff's own allegations make clear that BZL § 160-8 does not bar review of a variance application to address an *existing violation*; it merely bars review of any variance applications that are *distinct and unrelated* to the violation on the applicant's property. In other words, residents of the Town may still apply for a variance to resolve an existing violation, but the Town will not review any other variance applications until the violation is resolved.

This understanding of BZL § 160-8 is clear with context. For one, BZL § 160-119(E) expressly indicates that "[r]elief or release from any stop-work order may be obtained . . . if a variance is granted by the Zoning Board of Appeals." If BZL § 160-8 barred landowners from applying for a variance after a SWO is issued, BZL § 160-119(E) would have no meaning. Beyond the statutory text, Plaintiff admits on several occasions that Town representatives instructed him to apply for a variance to resolve the SWO on his barn. In Golden's letter attached to the SWO, he stated that "[a]n area variance will also have to be submitted" to address the violation. Dkt. No. 36-6 at 2. On a separate occasion, Golden told "Plaintiff and counsel on site he needed an area variance for his barn." Compl. ¶ 261. Golden stated the same in his letter denying Plaintiff's amended building permit application, writing that Plaintiff needed to "apply[] for an area variance due to [the] building size." Dkt. No. 36-19 at 2. The Complaint further states that "[t]he Town . . . instruct[ed] Plaintiff to apply for an area variance for square footage of his

barn." Compl. ¶ 513. With this context in mind, the Court finds that BZL § 160-8 posed neither a statutory nor practical bar for Plaintiff to apply for a variance.

Plaintiff further posits that the "final decision" requirement is satisfied because the ZBA's denial of his appeal "could have determined that Plaintiff needed a variance, instructed him to submit a formal application for a variance, or could have granted a variance," but it did not. Resp. to Town Mot. at 8. However, the ZBA's decision did not deny Plaintiff an application for a variance, nor did it bar Plaintiff from applying for one, nor did it indicate that it would not grant Plaintiff a variance if he applied for one. *See generally* Dkt. No. 36-8. Its choice not to address the possibility of a variance in its denial of Plaintiff's appeal does not render an application for a variance futile.

The Complaint is devoid of any other allegations that would support a finding of futility; there is no showing that the Town would not have been unable to grant Plaintiff a variance, or that it has "dug in its heels and made clear that all such applications will be denied." *Ferncliff*, 834 F. App'x at 666 (quoting *Murphy*, 402 F.3d at 349). Accordingly, because Plaintiff did not seek a variance, he never received a "final decision" on his building permit application. The Court finds Plaintiff's due process and equal protection challenges to be unripe. Plaintiff's claims are dismissed without prejudice.

### B. First Amendment Claim

Plaintiff alleges that Defendants retaliated against him for "speaking about matters of great public concern" and "submitting various land use applications," in violation of the First Amendment. The Town Defendants and Herrington argue, *inter alia*, that Plaintiff's claim is not ripe. Town Mot. at 7–10; Herrington Mot. at 4–8. The Court agrees with Defendants.

"Courts have expanded application of [the *Williamson County*] ripeness doctrine to a number of constitutional claims, including First Amendment retaliation claims." *Rosendale v.*

*Brusie*, No. 07-CV-8149, 2009 WL 778418, at *7 (S.D.N.Y. Mar. 25, 2009) (citing *Murphy*, 402 F.3d at 350). "To determine whether the ripeness test should be applied to [First Amendment] claims involving land use challenges, courts consider two factors: (1) whether the plaintiff experienced an immediate injury as a result of the defendant's actions, and (2) whether requiring the plaintiff to pursue additional administrative remedies would further define his or her alleged injuries." *Id.* (citing *Murphy*, 402 F.3d at 351). With respect to the first factor, the Second Circuit has made clear that a plaintiff must "show that he suffered some injury independent of the challenged land-use decision." *Sunrise Detox V*, 769 F.3d at 123; *see also Dean v. Town of Hempstead*, 163 F. Supp. 3d 59, 83 (E.D.N.Y. 2016).

The Second Circuit's decision in *Dougherty v. Town of North Hempstead Board of Zoning Appeals* was among the first to assess whether the *Williamson County* ripeness doctrine applies to First Amendment claims in the land-use context. 282 F.3d 83 (2d Cir. 2002). In *Dougherty*, the plaintiff brought a suit in federal court alleging that the defendants violated his equal protection and due process rights when they denied his first building permit application. *Id.* at 87. While litigation was ongoing, the defendants granted the plaintiff's second building permit application. *Id.* After the plaintiff submitted a filing opposing the defendants' motion to dismiss, the defendants revoked the plaintiff's permit. *Id.* The plaintiff subsequently amended his complaint to add a First Amendment retaliation claim. *Id.*

The Second Circuit held that the plaintiff's First Amendment retaliation claim was not subject to the final decision rule. For one, it was "based upon an immediate injury." *Id.* at 90. The injury was independent from the challenged land-use decision—the plaintiff filed suit to challenge the denial of his first building permit application, while the alleged injury in the retaliation claim was the revocation of the permit that the plaintiff received pursuant to his

second permit application. Further, the *Dougherty* court found that the plaintiff's "pursuit of a further administrative decision would do nothing to further define his injury." *Id.* Whether Plaintiff received a "final decision" on his first building permit application had no bearing on the fact that the permit he later received was revoked. The Second Circuit proceeded to assess the merits of the First Amendment claim. *Id.* at 91.

Three years later, the Second Circuit distinguished its *Dougherty* decision in *Murphy v. New Milford Zoning Commission*, another case with a First Amendment claim in the land-use context. 402 F.3d 342 (2d Cir. 2005). There, the plaintiffs asserted violations of their First Amendment rights to assemble peaceably and exercise their religion freely after the defendants imposed a cease-and-desist order that required the plaintiffs to stop their weekly prayer meetings. *Id.* at 345. The *Murphy* court noted that "the cease and desist order did not inflict an immediate injury," and there existed no other immediate hardship, distinct from the impacts of the cease-and-desist order itself. *Id.* at 351. Further, the *Murphy* court found that "the resolution of the constitutional and statutory claims we are asked to consider here hinge on factual circumstances not yet fully developed." *Id.* The court concluded that the "final decision" rule applied. *Id.* at 352.

In its decision, the *Murphy* court also stressed the "strong policy considerations supporting prong-one ripeness." *Id.* at 349. It noted that the "final decision" requirement "aids in the development of a full record," allows a court to "know precisely how a regulation will be applied to a particular parcel," may "provide the relief the property owner seeks without requiring judicial entanglement in constitutional disputes," and "evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution." *Id.* at 348.

Here, the Court finds that the "final decision" rule applies to Plaintiff's First Amendment claim. First, Plaintiff has failed to identify any immediate injury independent of the challenged land-use decision. The Complaint's allegations of retaliation speak in vague terms, referring only to "adverse actions taken by [Defendants] against Plaintiff," and "less favorable and/or unequal treatment." Compl. ¶¶ 557, 559. Even after drawing all inferences in favor of Plaintiff, the Court cannot identify any alleged injuries that are distinct from the challenged land-use decision itself. Additionally, any local decision on Plaintiff's application for a variance would further define the contours of Plaintiff's claim of First Amendment retaliation. If Plaintiff had filed an application for a variance, as instructed by both Golden and the Town, it is possible that his barn would have been permitted despite the initial denial of his building permit application. Indeed, "through the variance process[,] local zoning authorities function as 'flexible institutions; what they take with the one hand they may give back with the other.'" *Murphy*, 402 F.3d at 353 (quoting *MacDonald, Sommer & Frates*, 477 U.S. at 350).

The policy considerations laid out in *Murphy* further support such a finding. A more fully developed record would better enable the Court to resolve this claim. It ensures that "federal review—should the occasion eventually arise—is premised on concrete and established facts." *Murphy*, 402 F.3d at 353. Further, the Court's interest in avoiding any unnecessary constitutional adjudication and preserving local land-use disputes for local resolution tip the scales toward imposing the "final decision" requirement in this case.

Accordingly, the Court applies the "final decision" requirement to Plaintiff's First Amendment claim. For the reasons detailed in Part IV.A., Plaintiff has not received a "final decision" regarding the building permit application for his barn. Therefore, Plaintiff's First Amendment claim is unripe and dismissed without prejudice.

### C. Void-for-Vagueness Claim

Plaintiff argues that Defendants violated his rights by enforcing BZL § 160-29 against him, because it is unconstitutionally vague.[4] The Court finds this claim to be similarly unripe.

The "final decision" rule has been imposed to as-applied, void-for-vagueness challenges to local ordinances. "[W]here a plaintiff mounts an as-applied challenge to the enforcement of a land-use or zoning statute or regulation, such as [the plaintiff's] . . . as-applied vagueness claims, a final decision adverse to the property holder is generally required for a claim to be ripe." *LuxuryBeachfrontGetaway.com, Inc. v. Town of Riverhead*, No. 17-CV-4783, 2018 WL 4635736, at *8 (E.D.N.Y. June 25, 2018), *report and recommendation adopted in part*, 2018 WL 3617947 (E.D.N.Y. July 27, 2018); *see also Yee v. City of Escondido*, 503 U.S. 519, 533–34 (1992) (noting that an as-applied challenge to a zoning ordinance "would be unripe" under *Williamson County*). Similar exceptions to the "final decision" requirement apply "if the plaintiff 'can show that he suffered some injury independent of the challenged land-use decision.'" *Riverhead*, 2018 WL 4635736, at *8 (quoting *Sunrise Detox V*, 769 F.3d at 123).

For the reasons discussed in Part IV.B, the Court finds that this claim is also unripe. For one, Plaintiff failed to plead an injury independent of the challenged land-use decision. The only injury alleged by Plaintiff in this portion of the Complaint is "the deprivation of Plaintiff's protected rights," which is neither specific enough nor sufficiently independent of the challenged land-use decision. Compl. ¶ 367. Further, similar policy considerations favor imposing the

---

[4] In the Town Motion Response, Plaintiff argues that his "facial challenge" to BZL § 160-29 survives the instant Motions. Resp. to Town Mot. at 32–35. However, the Court understands the Complaint only to assert an as-applied challenge to the ordinance. *See* Compl. ¶¶ 359–68 (contesting the constitutionality of BZL § 160-29 "[a]s applied and enforced herein"). New claims not specifically asserted in the Complaint may not be considered by the Court when deciding a motion to dismiss. *Lerner v. Forster*, 240 F. Supp. 2d 233, 241 (E.D.N.Y. 2003). Accordingly, the Court will not consider a facial challenge to the ordinance.

ripeness requirement. Requiring a "final decision" allows for the development of a more robust

record which will better enable to the Court to resolve this claim, and it ensures that "all non-

constitutional avenues of resolution have been explored first, perhaps obviating the need for

judicial entanglement in these constitutional disputes." *Murphy*, 402 F.3d at 354.

Accordingly, the "final decision" requirement must be satisfied before the Court can rule

on Plaintiff's as-applied void-for-vagueness claim. Because Plaintiff has not received a "final

decision" regarding the building permit application for his barn, *see* Part IV.A, his claim is

unripe and dismissed without prejudice.

### D.  Vested Property Right Claim

Unlike the aforementioned claims, Plaintiff's claim that Defendants deprived him of a

vested property right is not subject to the *Williamson County* ripeness doctrine. *See Londregan v.

Town of East Lyme*, 666 F. Supp. 3d 192, 199–200 (D. Conn. 2023) (noting that the *Williamson

County* "final decision" rule does not apply to a landowner's claim that their property rights have

vested); *Cedarwood Land Planning v. Town of Schodack*, 954 F. Supp. 513, 521 (N.D.N.Y.

1997) (considering whether the plaintiff's property rights had vested despite finding his takings

claim unripe under *Williamson County*). Accordingly, the Court finds that subject matter

jurisdiction exists with respect to this claim.

#### 1.   Colorado River Abstention

The Town Defendants argue that the Court should "nonetheless abstain from hearing

Plaintiff's challenges pursuant to the *Colorado River* Doctrine," because there exists parallel

state court litigation that could result in comprehensive disposition of litigation. Town Mot. at

10–12. The Court disagrees.

"Abstaining from exercising federal jurisdiction 'is the exception, not the rule.'"

*Mochary v. Bergstein*, 42 F.4th 80, 84 (2d Cir. 2022) (citing *Colorado River Water Conservation*

*Dist. v. United States*, 424 U.S. 800, 813 (1976)). "Where a federal court has subject matter jurisdiction, it has a virtually unflagging obligation to exercise that jurisdiction, even if an action concerning the same matter is pending in state court." *Id.* (cleaned up). "[T]he balance is heavily weighed in favor of the exercise of jurisdiction." *Woodford v. Cmty. Action Agency of Green Cty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) (cleaned up).

A threshold determination in a *Colorado River* analysis is whether the state court litigation is "parallel" to the federal court proceedings. *Mochary*, 42 F.4th at 85. "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Id.* (quoting *Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)). "Mere 'commonality in subject matter' does not render actions parallel." *Id.* at 86 (quoting *Dittmer*, 146 F.3d at 118).

Here, Plaintiff's state court proceeding is not parallel to the federal litigation in this Court. Plaintiff's proceeding in state court includes only the Town and the ZBA as defendants, while the instant litigation includes several other defendants. *See Bulson v. Town of Brunswick*, N.Y.S. EF2024-275788, Dkt. No. 92. Further, the state court action seeks only a judgment for equitable and declaratory relief under state law; it brings no federal constitutional claims and seeks no monetary damages. *Id.* Accordingly, because the state and federal actions "involve different parties, different issues, and different remedies," they are not sufficiently parallel to satisfy *Colorado River*'s threshold determination. *See Mochary*, 42 F.4th at 86.

Because the Court finds that the concurrent proceedings are not parallel, the Court need not continue with its *Colorado River* analysis. The Court declines to dismiss this case under *Colorado River* abstention.

### 2. *Failure to State a Claim*

In the Complaint, Plaintiff alleges that his property rights vested because Defendants initially issued Plaintiff a building permit, and Plaintiff incurred substantial expenses in reliance on that permit.[5] Compl. ¶¶ 546–552. Defendants argue that Plaintiff's property rights never vested. Town Mot. at 39–40. The Court agrees with Defendants.

"The Second Circuit uses a strict entitlement test to determine whether a party's interest in land-use regulation is protectible under the Fourteenth Amendment. The entitlement test applies to claims—such as the one raised here—involving a local government's revocation of a land-use benefit that the plaintiffs had previously been granted." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 784 (2d Cir. 2007) (cleaned up). In applying the entitlement test, courts "look[] to 'existing rules or understandings that stem from an independent source such as state law to determine whether a claimed property right rises to the level of a right entitled to protection.'" *Id.* (citing *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 130 (2d Cir. 1998)). Accordingly, the Court turns to New York state law to determine whether Plaintiff enjoys a protectible property right. *See id.*

"Under New York law, a property owner has no right to an existing land-use benefit unless that right has 'vested.'" *Id.* "[A] vested right can be acquired when, pursuant to a legally issued permit, the landowner demonstrates a commitment to the purpose for which the permit was granted by effecting substantial changes and incurring substantial expenses to further the development." *Id.* (quoting *Town of Orangetown v. Magee*, 665 N.E.2d 1061, 1064 (N.Y.

---

[5] Plaintiff does not identify which law Defendants breached when they deprived him of a vested property right. However, Plaintiff notes that he brings the vested rights claim pursuant to Section 1983. Compl. ¶ 9. Accordingly, the Court interprets Plaintiff's claim to allege that Defendants violated his Fourteenth Amendment due process rights when they deprived him of a vested property right.

1996)). However, "vested rights cannot be acquired in reliance upon an invalid permit." *Astoria*

*Landing, Inc. v. New York City Envtl. Control Bd.*, 50 N.Y.S.3d 448, 450 (N.Y. App. Div. 2017)

(quoting *Westbury Laundromat, Inc. v. Mammina*, 879 N.Y.S.2d 188, 191 (N.Y. App. Div.

2009)). "The mistaken or erroneous issuance of a permit does not estop a municipality from

correcting errors, even where there are harsh results." *Id.* (cleaned up). Indeed, if a building

permit was issued in violation of existing zoning laws, the landowner cannot claim that his

property right has vested. *See id.* at 450–51 (finding that the plaintiff's property right did not vest

because the permit did not comply with a local zoning ordinance); *Westbury Laundromat*, 879

N.Y.S.2d at 191 (same).

The dispositive question in this case, then, is whether Plaintiff's building permit was

issued in violation of existing zoning laws, such that it was invalid at the time of issuance. New

York state courts have held that determining whether a building permit complies with existing

zoning laws is "an appropriate inquiry" for the local zoning board. *Perrotta v. City of New York*,

486 N.Y.S.2d 941, 944–45 (N.Y. App. Div. 1985) ("A determination as to whether [the plaintiff]

had vested rights under his building permit must, of necessity, involve an examination of the

validity of the permit, as well as compliance with technical provisions of the [zoning ordinance],

and this is clearly an appropriate inquiry for agency expertise."). In questions relating to the

zoning board's expertise, the zoning board's "interpretation of the statute's terms must be given

great weight and judicial deference, so long as the interpretation is neither irrational,

unreasonable nor inconsistent with the governing statute." *Toys R Us v. Silva*, 676 N.E.2d 862,

866 (N.Y. 1996) (cleaned up). "[D]eference is appropriate where the question is one of specific

application of a broad statutory term." *Peyton v. New York City Bd. of Standards and Appeals*,

164 N.E.3d 253, 259 (N.Y. 2020) (quoting *O'Brien v. Spitzer*, 851 N.E.2d 1195, 1196 (N.Y.

2006)). "Its determination, moreover, must be sustained if it has a rational basis and is supported by substantial evidence." *Toys R Us*, 676 N.E.2d at 866.

The Town Defendants argue that Plaintiff's "permit was improperly issued under the applicable Town Code" because BZL § 160-29 requires that all accessory structures, except for agricultural buildings, be less than 1,500 square feet. Town Mot. at 40. Plaintiff does not dispute that his structure exceeded the 1,500 square foot limit. *See* Compl. ¶ 154. Rather, he contends that the permit was properly issued because his structure fits into the "agricultural buildings" exception to the square footage requirement under BZL § 160-29. *Id.* ¶ 156; *see* Resp. to Town Mot. at 29–30. In determining whether Plaintiff's structure fits into the "agricultural building" exception, the Court finds that deference to the ZBA is appropriate. This is a "specific application of a broad statutory term." *Peyton*, 164 N.E.3d at 259. Accordingly, the Court will sustain the ZBA's determination if it has a rational basis and is supported by substantial evidence. *Toys R Us*, 676 N.E.2d at 866.

The ZBA's conclusion that Plaintiff's structure did not fit under the "agricultural building" exception to BZL § 160-29 is neither irrational, unreasonable, nor inconsistent.[6] *See* Dkt. No. 36-8 at 5–11. In its decision, the ZBA first identified the BZL's definition of the word "agriculture." *Id.* at 5. Next, it explained that under BZL § 160-29, an "agricultural building" is a structure that "relates to or is used in connection with a farm operation, a commercial equine operation, a commercial horse boarding operation, compost, mulch or other biomass crops, a timber operation, an accessory agribusiness, and/or agricultural tourism—each as specifically

---

[6] In the Town Motion Response, Plaintiff cites to statements from Golden as evidence that his structure fits into the "agricultural building" exception under BZL § 160-29. Resp. to Town Mot. at 29. However, it is the determination of the ZBA, not Golden, that is relevant to this analysis. *See Toys R Us*, 676 N.E.2d at 866.

defined in Town Code § 160-12." *Id.* at 6. Then, the ZBA considered multiple letter submissions

and other correspondence from Plaintiff, and analyzed whether Plaintiff's structure fell into this

definition. *Id.* at 8–11. The ZBA concluded that the evidence could not support such a finding.

*Id.* at 11. The Court finds that the ZBA's decision has a rational basis and is supported by

substantial evidence. *See Toys R Us*, 676 N.E.2d at 866. Accordingly, the Court defers to the

ZBA's determination that Plaintiff's building permit was in violation of existing zoning laws,

such that it was invalid at the time of issuance. Because "vested rights cannot be acquired in

reliance upon an invalid permit," Plaintiff's vested property right claim fails, and it is dismissed

without prejudice. *See Astoria Landing*, 50 N.Y.S.3d at 450.

### E.  Conspiracy to Violate Civil Rights Claim

"A [Section] 1983 conspiracy claim will stand only insofar as the plaintiff can prove the

*sine qua non* of a [Section] 1983 action: the violation of a federal right." *Bertuglia v. Schaffler*,

672 F. App'x 96, 102 (2d Cir. 2016) (quoting *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d

Cir. 1995)) (alterations omitted). "Thus, if a plaintiff cannot sufficiently allege a violation of his

rights, it follows that he cannot sustain a claim of conspiracy to violate those rights." *Romer v.*

*Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000). Because none of Plaintiff's

constitutional claims survive the Motions, he cannot sustain a claim of conspiracy to violate his

civil rights. Plaintiff's conspiracy claim is dismissed without prejudice.

## V.    THE REMAINING DEFENDANTS

Despite its excessive length, the Complaint does not identify which claims are brought

against which defendants. In an abundance of caution, the Court assumes that Plaintiff intended

to bring every claim against every defendant named in this action. While Defendants Andrew

Gilchrist and Herrington Farms, Inc. are not parties to the instant Motions, Plaintiff's unripe

claims are *sua sponte* dismissed without prejudice against them at this time. *See Simmonds v.*

*I.N.S.*, 326 F.3d 351, 358 n.8 (2d Cir. 2003) ("Article III ripeness is a constitutionally mandated jurisdictional prerequisite, and so its absence must be noted by a court *sua sponte*."). Further, because the Court found that Plaintiff did not possess a vested property right and that his conspiracy to violate civil rights claim cannot survive without a sufficiently alleged violation of his rights, the Court *sua sponte* dismisses these claims against Gilchirst and Herrington Farms, Inc. as well.

## VI.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Town Defendants' motion to dismiss, Dkt. No. 36, is **GRANTED**; and it is further

**ORDERED**, that Herrington's motion for judgment on the pleadings, Dkt. No. 42, is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's claims are **DISMISSED without prejudice**;[7] and it is further

**ORDERED**, that the Clerk close this action; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

---

[7] In dismissing Plaintiff's claims without prejudice, the Court "does not bar the bringing of a subsequent action on the same claim or claims." *Santos v. State Farm Fire and Cas. Co.*, 902 F.2d 1092, 1094–95 (2d Cir. 1990). If Plaintiff elects to bring any subsequent action, he is reminded of Rule 8's requirement that the complaint include "a *short and plain* statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). "Each allegation must be simple, concise, and direct," Fed. R. Civ. P. 8(d)(1), to give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

DATED:    March 7, 2025
               Albany, New York

LAWRENCE E. KAHN
United States District Judge